UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CASE NO. 0:03-cv-217-HRW

J & A FLEETING, INC.                                                PLAINTIFF


V.


FIREMAN'S FUND MCGEE
MARINE UNDERWRITERS                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross motions for summary judgment.[Docket No. 17, 18]. The dispute concerns a sunken boat and a contract for marine insurance. Plaintiff claims damages under an insurance policy written by Defendant for the sinking of the Plaintiff's vessel. The court ordered both parties to submit motions for summary judgment on the matter, and now finds for the Defendant.

## I. FACTUAL BACKGROUND

On August 5, 2002, Plaintiff's vessel, the "Ashley W" sank while docked in the Big Sandy River. Prior to sinking, Plaintiff had purchased a policy from Defendant to insure the "Ashley W. According to the contract, the policy limit on the "Ashley W" was $100,000. After the loss, Plaintiff demanded proceeds under the contract of insurance, and Defendant refused to pay. Plaintiff argues that the loss is covered by the contract. Defendant argues that the loss was not caused by a peril covered under the contract but rather the result of wear and tear on the vessel's mechanical systems.

Pleadings and affidavits of both parties indicate that a pump failure in the boat's shaft

alley (a part of the boat's engine room) caused the "Ashley W" to sink. Plaintiff knew of a problem with the propeller shaft that was allowing more water than usual to enter the shaft alley than usual. Plaintiff had been monitoring the situation and had ordered a new part prior to sinking, but the boat remained in service.

Plaintiff did not demand a jury trial in this matter. A pretrial conference took place on June 6, 2005 at which time the court requested the cross-motions for summary judgment discussed below.

## II. DEFENDANT'S MOTION

In its Motion for Summary Judgment [Docket No. 17], Defendant contends Plaintiff allowed the condition of the boat to decline while continuing to operate it and that this caused the loss. Defendant claims that losses caused by such wear and tear of the vessel are not covered by the insurance policy. Defendant further claims that Plaintiff's knowing continued use of the vessel after it had arguably fallen into disrepair breached a warranty of seaworthiness and provisions in the contract relating to negligence of the Plaintiff.

Following the loss, Defendant employed an independent surveyor to assess the condition of the vessel and cause of the loss. A copy of the surveyor's report [Docket No. 17, Attachment No. 4] is appended to Defendant's motion, but Defendant refers specifically to the finding that the boat appeared to be in disrepair and that sump pumps had been keeping the boat afloat. The surveyor also noted that the Plaintiff had ordered a new port shaft prior to the sinking. Finally Defendant cites the surveyor's conclusion that the sinking was due to "the reportedly leaking shaft and rudder packing glands, which the assured [J&A] already knew were leaking due to wear."

2

Additionally, Defendant offers the affidavit of another witness [Docket No. 17, Attachment No. 5] who stated that: 1.) the showed a lack of maintenance; 2.) a vessel should never be left moored and unattended; and 3.) such is a failure to exercise due care under the circumstances

Defendant's argument can be distilled to the following: The conditions that brought about the sinking were a product of wear and tear as well as lack of maintenance, Plaintiff already knew of these conditions and was concerned enough to order a new part, Plaintiff continued to operate the vessel six days a week for 12-24 hours a day despite this knowledge, and Plaintiff left the boat moored to the dock overnight unattended. The totality of these facts, urges the Defendant, show a failure of due diligence on Plaintiff's part and thus a discharge of any obligation on the part of the Defendant to pay for the losses.

### III. PLAINTIFF'S MOTION

In its motion [Docket No. 18], Plaintiff argues the loss is covered by the contract of insurance [Docket No. 1, Attachment No. 1] (Form SP-39C, lines 24-26, 31-33) which provides coverage for loss directly caused by:

> "Breakdown of motor generators or other electrical machinery and electrical connections thereto [sic] bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull,(excluding the cost and expense of replacing or repairing the defective part);
> ...Negligence of master, mariners, engineers or pilots;
> **Provided such loss or damage has not resulted from want of due diligence** by the assured, the owners, or managers of the vessel, or any of them"(emphasis added).

Plaintiff contends the mechanical/electrical failure of the pumps is within this clause and

3

that there was no lack of due diligence either in the maintenance or monitoring of the vessel. Plaintiff points to the fact that both Plaintiff and his pilot had monitored the pump situation during the week prior to the sinking, a replacement part had been ordered, and that it was not possible to dry-dock at the time. Further, Plaintiff asserts that the burden of due diligence was met in that the pilot was "on call" that weekend and could monitor the water levels and operation of the pumps. Plaintiff also contends that the vessel was adequately monitored by virtue of the informal agreement with the Terminal security guards to "keep an eye on" the "Ashley W."[1]

Alternatively, Plaintiff argues even if he failed to use due diligence, such failure is immaterial by virtue of a "superceding cause." In other words, Plaintiff alleges that some sudden outside occurrence intervened to bring about the failure of the two pumps that had been working properly. As evidence of this, Plaintiff offers the statement of an employee of the Terminal, who states that an on-shore computer system had gone down sometime between midnight of Saturday and 6:30 am on Monday. It has also been observed that the breakers to the failed pumps had all been tripped. Plaintiff argues that the two events are connected, and that "(a)lthough these two electrical devices were not on the same electrical circuit they were close enough together to be affected by some kind of electrical surge as that caused by a nearby lightening strike."

Finally Plaintiff states that it was unforeseeable that all three pumps would fail (one that had already started to go bad, two that apparently had their breakers tripped) and the on shore terminal guard would not observe the boat sinking. "Sometimes mechanical devices fail in ways that result in unforeseeable consequences," adds Plaintiff. That is, Plaintiff argues, precisely why businessmen purchase insurance.

---

[1] Although Plaintiff does not provide proof to support such claim.

4

## IV. THE SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case, the Plaintiff. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiff in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

## V. ANALYSIS

### A. "Due Diligence"

Under the contract of insurance, Plaintiff must exercise due diligence as a condition of Defendant's obligation to pay. This condition is expressed in the contract

5

language relied upon by the Plaintiff, commonly known as the "Inchmaree Clause." Such
clauses are common among marine policies and are named for the vessel in the case of
origin. *See Thames & M. Marine Ins. Co. v. Hamilton, Fraser, & Co.* (1887, Eng) LR 12
App Cas 484 (HL).Therefore, even if the Inchmaree clause does contemplate a pump
failure as occurred here, Plaintiff will still be held to a certain standard of care. "The
insured will be charged with using normal and customary care to prevent the loss," Couch
on Insurance 3d, §99.34.

Plaintiff takes the position that this standard was met by its monitoring of the
pump situation prior to the sinking. The record, however, indicates that the vessel was in
use six days a week for 12 to 24 hours a day while Plaintiff knew of the leakage in the
shaft alley and while Plaintiff was waiting for replacement equipment. Additionally the
record shows that the boat was left at dock unattended overnight. Defendant's affidavits
tend to show that this was a breach of the standard of care required by Plaintiff under the
contract of insurance.

**B. Warranty of Seaworthiness**

There is no express warranty of or reference to seaworthiness on the face of the
insurance contract. Marine insurance policies such as the one before the court (ie,
providing coverage for a stated period of time) often contain an implied warranty of the
seaworthiness of the vessel. *See Ins. Co. of North America v. Bd. of Comm'rs of New
Orleans,* 733 F.2d 1161, 1165, 1985 A.M.C. 1460 (5th Cir. La. 1984); *Hazard's Adm'r v.
New England Marine Ins. Co.,* 33 U.S. 557, 581, 8 L.Ed. 1043 (1834). *See generally*
Couch on Ins.3d § 99.18.

Ordinarily the burden is on the Defendant/Insurer to establish a lack of seaworthiness and consequent breach. In this case however, Plaintiff must overcome the rebuttable presumption that arises upon a vessel's sinking while moored to dock in calm water (ie, that the vessel was unseaworthy). If the Plaintiff/Owner produces evidence to the contrary, the burden shifts back to the insurer. *Reisman v. New Hampshire Fire Ins. Co.,* 312 F.2d 17, 20 (5th Cir. 1963); *Boston Ins. Co. v. Dehydrating Process Co.,* 204 F.2d 441 (1st Cir. 1953); and *see generally* Couch on Ins. 3d § 99.33. Plaintiff has offered the statement of its President, William Plants, that "the 'Ashley W' would not sink even if the shaft alley pump failed as long as the other two pumps were working," as proof of the seaworthiness of the vessel. Defendant's witness affidavits say the fact that the boat "was being kept afloat only by bilge pumps" (ie, there was a constant leak and nearly constant pumping) made it unseaworthy.

When, as in this case, the boat sinks in calm water, the Plaintiff must produce competent evidence to shift the burden onto the Defendant. Here, Plaintiff has given the Court nothing to chew on, so to speak. In other words, the unsupported opinion of Plaintiff's own President as to the seaworthiness of the vessel is insufficient to rebut the presumption.

## C. "Superceding Cause"

As discussed above, Plaintiff argues that even if a lack of due diligence is found, it's excused by the intervention of a superceding cause–namely, the unknown electrical event that caused the on-shore computer to reset. In support of this argument, Plaintiff

7

cites *Briscoe v. Amazing Products, Inc.*, 23 S.W.3d 228 (Ky. App. 2000). *Briscoe* involves a product liability action against a manufacturer and retailer of drain cleaner. No liability to the injured plaintiff was found because the intervening (criminal) act of a third party was the cause of the injury. That is, the third party threw the drain cleaner on the plaintiff. The court identified a superceding cause as a third party act or outside force which, as a matter of law, cuts off liability to the injured for any antecedent negligence on the part of the actor.

Whatever view is taken with regard to the causal connection between the breach of warranty of seaworthiness and the loss at issue, the "superceding cause" that Plaintiff refers to is little more than speculative. None of the witnesses offered can offer personal knowledge of the event. There is a statement of the on-shore terminal employee as to the fact that his computer had gone down at some point, but no evidence to affirmatively establish a power outage or any other concrete event or that this mysterious event indeed caused the boat to sink. In short, the Plaintiff has not come forward with sufficient evidence on which a jury could base a finding that there was a superceding cause behind the sinking of the boat.

## VI. CONCLUSION

The scant evidence Plaintiff submitted does not carry Plaintiff's burden under the standard. Beyond the statements of the boat's owner and pilot, no proof has been adduced to establish that any kind of preservative maintenance had ever been done on this boat. There is no proof of the arrangement with the on-shore security guards to keep an eye on the boat, and

likewise there is no statement from a guard or anyone on duty the night the boat sank. Further, the only evidence of the alleged superceding event is Plaintiff's own speculation. To rebut the presumption of unseaworthiness that follows a sinking in calm water, Plaintiff must produce competent evidence to that effect. *See Underwriters at Lloyd's v. Labarca,* 260 F.3d 3 (1st Cir. 2001). Plaintiff has not produced anything on which a jury could so find. No maintenance records or any other proof of the seaworthiness of the vessel have been offered. In short, the only evidence before the Court as to the boat's condition is that produced by the Defendant to the effect that the vessel was in disrepair.

The Plaintiff has the burden to carry in the face of the sinking in calm water and has failed. As such, summary judgment must be entered for the Defendant. Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED,** and the Defendant's Motion for Summary Judgment be **SUSTAINED.** A Judgment in favor of the Defendant shall be entered contemporaneously herewith.

This 3 day of January, 2006.

Henry R. Wilhoit, Jr., Senior District Judge

9